IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JORDAN ROBBINS,
    *Plaintiff*,

v.

TD BANK, N.A.,
    *Defendant*

Case No. 24-cv-2032-ABA

## MEMORANDUM OPINION AND ORDER

In April 2024, Defendant TD Bank denied Plaintiff Jordan Robbins's application for a mortgage. Plaintiff alleges that TD Bank violated numerous federal and state laws. TD Bank filed a motion to dismiss, which will be granted for the reasons that follow.

**I.    FACTUAL BACKGROUND**

For the purposes of this motion to dismiss, the Court accepts the factual allegations contained in Plaintiff's complaint and attached exhibits as true and draws all reasonable inferences in Plaintiff's favor. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016) (citing Fed R. Civ. P. 10(c)). However, "in the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to [Federal Rule of Civil Procedure] 10(c) . . . the exhibit prevails." *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

On March 11, 2024, Plaintiff submitted an application to TD Bank for a mortgage loan of $700,000. *See* ECF No. 1 ¶ 1; ECF No. 1-2. TD Bank emailed Plaintiff confirming receipt. ECF No. 1-2 at 3. Plaintiff alleges that, by submitting this application, he "entered into a consumer credit transaction involving a credit sale with the Defendant TD Bank for a home mortgage loan" of $700,00. ECF No. 1 ¶ 1.

1

Three days later, Plaintiff sent a "Notice of Claim to Interest" letter to Kelvin Vi Luan Tran, TD Bank's Chief Financial Officer. ECF No. 1-3 at 5. The letter purported to notify TD Bank that Plaintiff was "exercising the right to credit" and requested that Mr. Tran "promptly transfer the principal[']s balance to the principal[']s account." *Id.*[1] Plaintiff alleges that the letter constituted "a negotiable instrument" and that he was "tender[ing] . . . accord and satisfaction." ECF No. 1 ¶ 2. On March 25, 2024, Plaintiff sent a nearly identical second letter, subtitled "Opportunity to Cure," again instructing Mr. Tran to transfer him $700,000. ECF No. 1-3 at 9. A third letter, subtitled "Default Judgment," followed on April 4, 2024. *Id.* at 13.

On April 9, 2024, TD Bank responded to Plaintiff's application and letters, informing him that his Mortgage Application was incomplete. ECF No. 1-4. TD Bank requested that Plaintiff provide his "Name, Income, SSN, [and] Property Address," among other information, to continue with the application process. *Id.* The letter also stated, "TD Bank is unable to process your request to transfer the principal balance to the principal[']s account due to the fact we do not have a complete application from you. *Id.* Plaintiff alleges on or about April 18, 2024 he submitted the additional information requested. ECF No. 1 ¶ 5. Plaintiff also sent another letter to Mr. Tran informing him that "you were given what was requested and now you have additional permission to process the transfer of the principal[']s balance to the principal[']s account." ECF No. 1-5 at 4. Plaintiff also accused TD Bank of violating consumer protection and

---

[1] This letter and the ones that follow were purportedly written by "Robbins, Jordan-E" as an agent for the "principal," Jordan Elias Robbins. ECF No. 1-3 at 5, 9, 13; ECF No. 1-5 at 4; ECF No. 1-7 at 4.

discrimination laws by asking for Plaintiff's income and property address—even though he was requesting a mortgage loan. *Id.*

On April 22, 2024, TD Bank sent Plaintiff a Prequalification Request Denial. ECF No. 1 ¶ 6; ECF No. 1-6. The denial letter stated that the decision was "based on the following reason(s)": inadequate collateral, insufficient assets, and "serious delinquency and derogatory public record or collection filed," among others. ECF No. 1-6. And on May 3, 2024, TD Bank responded to Plaintiff's April 18 letter. ECF No. 1-8. The letter stated that Plaintiff's "credit report confirmed that [his] credit score(s) does not meet the minimum required score for qualifying" for a mortgage. *Id.* Thus, "TD Bank [was] unable to process [Plaintiff's] request to transfer the principal balance to the principal[']s account." *Id.* TD Bank also noted that it had investigated Plaintiff's allegations and that its "investigation did not disclose any evidence of illegal discrimination." *Id.*

Three days later, Plaintiff wrote another letter to Mr. Tran to "dispute adverse action taken on [his] credit report and to give final notice." ECF No. 1-7 at 4. Plaintiff again accused TD Bank of violating numerous federal laws, and purporting to give TD Bank five business days to grant him a mortgage or he would be moving "forward with further legal procedures." *Id.* at 5.

On July 15, 2024, Plaintiff filed this action *pro se*. He asserts six counts: (1) breach of contract; (2) breach of fiduciary duty; (3) violation of the Federal Reserve Act; (4) violation of the Truth in Lending Act, 15 U.S.C. §§ 1601 *et seq.* ("TILA"), the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 *et seq.* ("ECOA"), and the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA"); (5) violation of Constitutional rights; and (6) emotional and financial distress. ECF No. 1 at 3–4. TD Bank filed a motion to

dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 7. Plaintiff filed a brief in opposition, ECF No. 10, and TD Bank filed a reply. ECF No. 12.

## II.     STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. *Id.* 12(b)(6). While this evaluation is "generally limited to a review of the allegations of the complaint itself," *Goines*, 822 F.3d at 165-66, the Court also considers documents explicitly incorporated into the complaint by reference, *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007), and documents attached to the complaint as exhibits. *See Goines*, 822 F.3d at 166 (citing Fed. R. Civ. P. 10(c)).

At the pleadings stage, the Court must "accept as true all of the factual allegations contained in the complaint" and the attached exhibits and must "draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). However, "in the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to [Federal Rule of Civil Procedure] 10(c) . . . the exhibit prevails." *Fayetteville Invs.*, 936 F.2d at 1465. Further, bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" by containing "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

4

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiff is proceeding *pro se* and therefore his complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). And while a court should be reluctant to dismiss a *pro se* complaint, *see*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam), a *pro se* litigant is not disposed of the duty to properly "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (omission in original) (quoting *Twombly*, 550 U.S. at 555).

### III.   DISCUSSION

#### A.   Count 1: Breach of Contract

Plaintiff alleges that his "mortgage application, tender, and instructions constituted a valid contract" and that TD Bank "breached this contract by refusing to comply with instructions and unlawfully denying the application." ECF No. 1 at 3. TD Bank argues that this count should be dismissed because (1) the complaint does not allege mutual assent, (2) the alleged contract was not sufficiently definite, (3) the complaint does not allege adequate consideration, and (4) the submission of an application for a mortgage loan does not create an enforceable contract. *Id.* at 12–15.

To state a claim for breach of contract under Maryland law, a plaintiff must allege "facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by the defendant." *RRC Ne., LLC v. BAA Md., Inc.*, 413 Md. 638, 655 (2010) (emphasis omitted) (quoting *Cont'l Masonry Co. v. Verdel Constr. Co., Inc.*, 279 Md. 476, 480 (1977)). A plaintiff cannot demonstrate a "contractual obligation owed" without adequately alleging the essential elements of a contract—including an

5

objective manifestation of mutual assent (offer and acceptance). *Id.*; *see also Creel v. Lilly*, 354 Md. 77, 101 (1999) (citing *Klein v. Weiss*, 284 Md. 36, 63 (1978)); *B-Line Med., LLC v. Interactive Digital Sols., Inc.*, 209 Md. App. 22, 46 (2012) ("The elements of a contract are offer, acceptance, and consideration."). To adequately allege a manifestation of mutual assent, a complaint must allege facts demonstrating an "'(1) intent to be bound, and (2) definiteness of terms.'" *Advance Telecom Process, LLC v. DSFederal, Inc.*, 224 Md. App. 164, 177 (2015) (quoting *Cochran v. Norkunas*, 398 Md. 1, 14 (2007)).

      Plaintiff's breach of contract claim fails because he does not adequately allege that he and TD Bank entered into an enforceable contract. Assuming (without deciding) that Plaintiff made an offer through either his loan application or his requests to TD Bank's CFO, that "offer" was never accepted. In fact, Plaintiff alleges that TD Bank repeatedly "ignor[ed] all notices" and ultimately denied Plaintiff's loan application. *See* ECF No. 1 ¶¶ 4, 6, 8; ECF No. 1-6. Though Plaintiff alleges that his loan application was a "Contract" and that he "tendered a negotiable instrument . . . as a performance to the contract," ECF No. 1 ¶¶ 1-2, these bare allegations are contradicted by the exhibits, which demonstrate that Plaintiff's application and instructions were unilateral acts that were never agreed to or ratified. *See Fayetteville Invs.*, 936 F.2d at 1465. TD Bank never demonstrated an "intent to be bound," *Cochran*, 398 Md. at 14, and the "minds of the parties" were never "in agreement as to its terms." *Klein*, 284 Md. at 63. There was no manifestation of mutual assent and no enforceable contract, and thus Count 1 will be dismissed. The Court need not address Defendant's alternative arguments for dismissal of Count 1.

### B.     Count 2: Breach of Fiduciary Duty

Plaintiff next alleges that "Defendant owed a fiduciary duty to act in Plaintiff's best interests" and that it "breached this duty by misrepresenting the application status." ECF No. 1 at 3. To establish a breach of fiduciary duty, a plaintiff "must demonstrate: (1) the existence of a fiduciary relationship; (2) breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary." *Plank v. Cherneski*, 469 Md. 548, 625 (2020).

"Maryland law is cautious in creating fiduciary obligations between banks and borrowers, absent special circumstances." *Windesheim v. Larocca*, 443 Md. 312, 338 (2015) (quoting *Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 366 (2012)); *see also Parker v. Columbia Bank*, 91 Md. App. 346, 368 (1992) ("[T]he relationship of a bank to its customer in a loan transaction is ordinarily a contractual relationship between a debtor and a creditor, and is not fiduciary in nature."). The "special circumstances" under which a fiduciary relationship *may* exist between a lender and a borrower are where the lender: "(1) took on any extra services on behalf of the borrowers other than furnishing money; (2) received a greater economic benefit from the transaction other than the normal mortgage; (3) exercised extensive control; or (4) was asked by the borrowers if there were any lien actions pending." *Polek*, 424 Md. at 366 (quoting *Parker*, 91 Md. App. at 370-71) (cleaned up). Plaintiff's complaint does not allege facts that would trigger any of these "special circumstances." Count 2 will be dismissed.

### C.     Count 3: Violation of the Federal Reserve Act

Plaintiff next alleges that TD Bank violated sections 16 and 29 of the Federal Reserve Act. He alleges that his application, "accompanied with a tender, should have

7

been treated as equal collateral security for what was applied for." ECF No. 1 at 3. The Court construes this as an alleged violation of 12 U.S.C. §§ 411 and 412, the codification of the relevant portion of section 16 of the Federal Reserve Act, and 12 U.S.C. § 504, the codification of section 29. But as TD Bank argues, the Federal Reserve Act does not confer a private right of action. ECF No. 7-1 at 18. The Federal Reserve Act governs the interaction between banks and the Federal Reserve. "No law . . . in the country . . . suggests that a private individual may bring a claim under 12 U.S.C. § 411 or § 412." *Arnold v. Santander Consumer USA*, Case No. 24-cv-1125, 2025 WL 1358546, at *2 (D. Conn. May 9, 2025) (citing *Yancey v. Fulton Fin. Corp.*, Case No. 23-cv-1791, 2024 WL 1344534, at *1 (E.D. Va. Mar. 8, 2024)). "Courts have routinely held that . . . Sections 16 and 29 of the Federal Reserve Act do not confer a private right of action." *Yancey*, 2024 WL 1344534, at *1. Plaintiff has no private cause of action under sections 16 and 29 of the Federal Reserve Act, and so Count 3 will also be dismissed.

### D.     Count 4: Violation of Consumer Protection Laws

Next, Plaintiff alleges that TD Bank violated the Truth in Lending Act (TILA), the Equal Credit Opportunity Act (ECOA), and the Fair Credit Reporting Act (FCRA). ECF No. 1 at 3.

**TILA**. Plaintiff alleges that TD Bank violated TILA "by failing to provide clear and accurate information about [the] credit denial." *Id.* TILA "assure[s] a meaningful disclosure of credit terms" to support an "informed use of credit" by requiring creditors to make certain disclosures to consumers. 15 U.S.C. § 1601. For liability to exist under the relevant portion of the TILA, there must be a "consumer credit transaction." *See, e.g., Weintraub v. Quicken Loans, Inc.*, 594 F.3d 270, 275 (4th Cir. 2010). There can be no liability "until that transaction has been consummated, or put another way, until

8

credit is in fact extended." *Id.* (cleaned up); *see also* 12 C.F.R. § 226.17(b) ("The creditor shall make disclosures before consummation of the transaction."); 15 U.S.C. § 1638(b)(1) ("[T]he disclosures . . . shall be made before the credit is extended."). "'Consummation' in turn is defined to occur at the 'time that *a consumer* becomes *contractually obligated* on a credit transaction.'" *Gibson v. LTD, Inc.*, 434 F.3d 275, 280 (4th Cir. 2006) (quoting 12 C.F.R. § 226.2(a)(13)); *see also Weintraub*, 594 F.3d at 275 (reasoning that liability under TILA accrued "because the consumer . . . had become *contractually obligated* on the credit transaction . . . even though the transaction had not been formally consummated"). Here, the transaction was never consummated because the parties never entered into an enforceable contract. *See* § III.A, *supra*. Plaintiff fails to state a cognizable TILA claim.

**ECOA**. Plaintiff next alleges that TD Bank violated ECOA based on "discriminatory practices in the credit denial process." ECF No. 1 at 3. ECOA makes it unlawful for "any creditor to discriminate against any applicant . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a)(1). Plaintiff's complaint does not allege any facts that would support a claim that TD Bank's decision to decline to extend a mortgage to him was on the basis of one of those protected characteristics. Plaintiff fails to state a cognizable ECOA claim.

**FCRA**. Plaintiff next alleges that TD Bank violated the FCRA "by not disclosing specific reasons [for the denial] based on the credit report." *Id*. Congress enacted the FCRA to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see also* 15 U.S.C. § 1681(b). It appears the FCRA provision Plaintiff relies on is 15 U.S.C. § 1681m(a), which imposes certain duties on "users" who take "any adverse

9

action . . . based in whole or in part on any information contained in a consumer report." A user of a "consumer report" is any person (or entity, *see id.* § 1681a(b)) that utilizes "communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness" or other relevant factors collected or used "for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit." *Id.* § 1681a(d)(1). Even if TD Bank took an "adverse action with respect to a[] consumer that [was] based in whole or in part on any information contained in a consumer report," *id.* § 1681m(a), when it ran and reviewed Plaintiff's credit report, *see* ECF No. 1-8, Plaintiff does not state a claim for a violation of § 1681m(a) because, among other things, he has not alleged facts that, even if true, would constitute a violation of any of the obligations set forth in § 1681m(a), let alone negligently or willfully. *See* 15 U.S.C. § 1681o(a)(1) (providing that a plaintiff may recover actual damages in cases of negligent noncompliance); *id.* § 1681n(a)(1) (providing for statutory damages in cases of willful noncompliance); *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899–901 (4th Cir. 2003) (elaborating on those standards).

### E.    Count 5: Violation of Constitutional Rights

Next, Plaintiff alleges that, by denying his application for credit, TD Bank "infringed upon Plaintiff's fundamental rights under the Constitution, including the rights to life, liberty, and the pursuit of happiness." ECF No. 1 at 3. The Court construes this as a claim under 42 U.S.C. § 1983 for a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which provides that no "State" shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Plaintiff's complaint does not allege "that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*,

487 U.S. 42, 48 (1988) (collecting cases); *see also Lindke v. Freed*, 601 U.S. 187, 199 (2024) (noting that state action only exists when the state is "'responsible for the specific conduct of which the plaintiff complains.'") (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). Count 5 of the Complaint will be dismissed.

F.     **Count 6: "Emotional and Financial Distress"**

Last, Plaintiff contends that TD Bank's actions caused him "significant emotional distress and financial harm." ECF No. 1 at 4. The Court construes this as a claim for intentional infliction of emotional distress (IIED), given that "Maryland does not recognize the tort of negligent infliction of emotional distress." *Alban v. Fiels*, 210 Md. App. 1, 16 (2013). To establish a claim for intentional infliction of emotional distress, a plaintiff must allege facts demonstrating that "(1) [t]he conduct [was] intentional or reckless; (2) the conduct [was] extreme and outrageous; (3) there [was] a causal connection between the wrongful conduct and the emotional distress; [and] (4) the emotional distress [was] severe." *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 367 (2000) (quoting *Harris v. Jones*, 281 Md. 560, 566 (1977)). This tort is "to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Ky. Fried Chicken Nat'l Mgmt. Co. v. Weathersby*, 326 Md. 663, 670 (1992) (citing *Batson v. Shiflett*, 325 Md. 684, 734–35 (1992)).

For conduct to be "extreme and outrageous," it must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Batson*, 325 Md. at 733 (quoting *Harris*, 281 Md. at 567). Here, the most Plaintiff alleges is that TD Bank denied his mortgage application based on his credit history and his failure to provide requested information. Taken as

11

true, these allegations do not come close to alleging the "extreme and outrageous" conduct necessary to state a cognizable IIED claim.

## IV.   CONCLUSION AND ORDER

For the reasons explained above, it is hereby ORDERED as follows:

1. Defendant's motion to dismiss (ECF No. 7) is GRANTED;
2. Plaintiff's motion for leave to file a surreply (ECF No. 13) is GRANTED;
3. Plaintiff's complaint is DISMISSED WITH PREJUDICE;
4. The Clerk is directed to CLOSE this case.

Date:  August 20, 2025

_____/s/_____
Adam B. Abelson
United States District Judge